UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-80665-DDM

EMILY SCHWEITZER,

      Plaintiff,

v.

COMENITY BANK,

      Defendant.

_____/

**PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

**MARC A. WITES**
mwites@wklawyers.com
Fla Bar No. 24783
**WITES & KAPETAN, P.A.**
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 354-0205

Counsel for Plaintiff

Pursuant to Rule 56, Fed.R.Civ.P., and Local Rule 56.1, S.D.Fla.L.R., Plaintiff Emily Schweitzer files this Motion for Final Summary Judgment and Incorporated Memorandum of Law.[1]

## I.    INTRODUCTION

Plaintiff seeks final summary judgment on the issues of (a) Defendant's violation of the Telephone Consumer Protection Act for calling Plaintiff's cellular telephone with an automated telephone dialing system, and with an artificial or pre-recorded voice, (b) damages in the amount of $500 for each violative phone call, and (c) treble damages in the amount of $1,500 for each violative call.  Defendant has stipulated and admitted to the elements of Plaintiff's TCPA claim with the exception of the issues of revocation and whether Defendant knowingly or willfully violated the TCPA.  Thus, this Motion seeks final summary judgment on those elements of her claim to which Defendant has stipulated, and those which remain at issue.

## ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

The TCPA is a remedial statute which must be liberally construed in favor of and to benefit consumers. *E.g., Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 271 (3d Cir. 2013). To establish a claim for violation of the TCPA, a plaintiff must prove that the defendant called plaintiff's cellular phone, without her "prior express consent," using an "automatic telephone dialing system or an artificial or prerecorded voice." *E.g., Cavero v. Franklin Collection Serv. Inc.*, No. 11-22630-CIV, 2012 WL 279448, at *2 (S.D. Fla. Jan. 31, 2012) quoting 47 U.S.C. §

---

[1]   As noted in Plaintiff's Statement of Material Facts filed simultaneously herewith, all references to Exhibits herein are those exhibits attached to Plaintiff's October 19, 2015, Memorandum in Opposition to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law [DE 35]. ("Plaintiff's Opposition"). To the extent Plaintiff offers additional support for her Motion, Plaintiff will attach such items to this Motion, and begin the identification of such exhibit with the next successive exhibit number, which shall be Exhibit H, as Exhibit G was the last identified exhibit in Plaintiff's Opposition Memorandum.

2279(b)(1).

While it is well-settled that the provision by a consumer of her cellular phone number as part of a credit application constitutes the required consent under the TCPA for a party to place calls to the consumer using an automated telephone dialing system (*i.e.*, "ATDS")(*e.g., Cavero* at *3), the Eleventh Circuit Court of Appeals has confirmed that in the absence of a contractual restriction, a party may orally revoke consent to receive calls. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1255-56 (11th Cir. 2014); *see also In re Rules and Regulations Implementing the TCPA of 1991,* Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, ¶¶ 55-70, 2015 WL 4387780 (released Jul**.** 10**,** 2015)(approving of *Osorio*, and concluding "that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept.");[2] *Legg v. Voice Media Group, Inc.*, 20 F.Supp. 3d 1370, 1378 (S.D. Fla. 2014)(citing *Osorio* at 1252 (addressing revocation of consent to receive text messages)).  Indeed, the TCPA does not contain restrictions on the rights of consumers to revoke prior express consent to receive calls. *E.g., Gager v. Dell Fin. Serv.*, 727 F.3d 265, 272 (3d. Cir. 2013)(reasoning that "the TCPA was intended to protect consumer rights, not restrict them" and that any silence in the TCPA must be construed in favor of consumers because the TCPA is a remedial statute)(citations omitted). Thus, after a consumer revokes consents, subsequent calls initiated via an ATDS violated the TCPA. *E.g., Legg* at 1378.

As explained by the *Osorio* court, **"**consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.**"**

---

2      Courts are bound by the FCC's interpretation of the TCPA.  *E.g., Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014).

*Osorio* at 1253 (citing Restatement (Second) of Torts § 892A (1979)). "[I]n light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers." *Gager,* 727 F.3d at 270.

## I. DEFENDANT'S STIPULATION TO THE ELEMENTS OF PLAINTIFF'S TCPA CLAIM

Defendant has stipulated that it used an automated telephone dialing system to place calls to Plaintiff's cellular telephone for non-emergency purposes (*see* Defendant's Stipulation, Exhibit D ([DE 35-4]); Gervais Dep., Exhibit G ([DE 35-7]) at p. 37, line 24 – p. 40, line 5; and Defendant's Amended Answer to Plaintiff's Amended Complaint [DE 20] at ¶¶1-2, 10-22, 24, and 28), and that the only issues that Defendant contests are (a) whether Plaintiff revoked her consent and (b) whether Defendant knowingly or intentionally violated the TCPA. *See* Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law ("Defendant's Motion" or "Def. Motion")[DE 24] at 12, n. 6 ("[b]ased on Defendant's Stipulations, the *only* contested issues in this case are whether Plaintiff consented to Defendant's calls and/or messages on her cellular phone, whether Plaintiff effectively revoked her consent and if so, whether Plaintiff is entitled to treble damages under 47 U.S.C. 227(b)(3).").[3] Defendant's Motion further explained this Stipulation and Defendant's concessions as follows:

> Defendant has previously stipulated for the purposes of this case that its telephone system falls under the purview of the TCPA and that the calls were placed calls using its telephone system to and left prerecorded messages on Plaintiff's cellular telephone. *See,* "Exhibit C" attached hereto. Defendant has also stipulated that it knew its telephone system fell under the purview of the TCPA at the time the calls were placed to Plaintiff and that Plaintiff advised Defendant on May 27, 2013, that the number it was calling was her cellphone. Based on Defendant's Stipulations, the *only* contested issues in this case are whether Plaintiff consented

---

[3]    Defendant further represented in its September 28, 2015 Response in Opposition to Plaintiff's Motion to Compel [DE 28]("Def. Opp.") that "there are no disputed issues with respect to the first element of Plaintiff's TCPA claim" and that "Defendant has conceded the initial element of Plaintiff's claim." *See* Def. Opp. at 6, 7, and 9 (reciting those facts and issues not in dispute).

to Defendant's calls and/or messages on her cellular phone, whether Plaintiff effectively revoked her consent and if so, whether Plaintiff is entitled to treble damages under 47 U.S.C. 227(b)(3).

Def. Motion at 3 (emphasis as in original). Thus, summary judgment on these elements of Plaintiff's TCPA claim is warranted because, by virtue of Plaintiff's proffer and Defendant's Stipulation, there are no disputes of material fact, and, as a matter of law, Plaintiff has satisfied the elements of the claim.

## II. DEFENDANT LACKED EXPRESS PRIOR CONSENT TO CALL PLAINTIFF

Consistent with its Stipulation, Defendant raises only one affirmative defense to Plaintiff's claim. Defendant claims that it obtained Plaintiff's prior express consent to call Plaintiff's cellular telephone using an ATDS through (a) Defendant's CCA and (b) Plaintiff's provision of her telephone number to Defendant. *See* Defendant's Answer at p. 5. Defendant's affirmative defense fails, and Plaintiff is entitled to partial summary judgment, because the undisputed material facts establish that Plaintiff effectively revoked her consent to receive calls from Defendant initiated via an ATDS to Plaintiff's cellular phone.

### A.  Plaintiff is Not Bound by the Credit Card Agreement

It is undisputed that Plaintiff never received the CCA that Defendant claims governs Plaintiff's Account. Faherer at p. 20, line 20 – p. 25, line 7, Exhibit A [DE 35-1]; Pltf. Dec. at ¶3. Accordingly, the CCA does not serve to establish Plaintiff's prior express consent for Defendant to call Plaintiff using an automated dialer or artificial or pre-recorded voice. *E.g., Lardner v. Diversified Consultants Inc.*, 17 F.Supp.3d 1215, 1224 (S.D.Fla. 2014)(granting summary judgement for the plaintiff where the defendant could not satisfy its burden of establishing the affirmative defense of prior express consent). Further, there is no record evidence that Plaintiff signed or received any other document that governs her account that provides the requisite

unambiguous written consent to receive calls using an automated dialer. *Id.*

**B.   Neither The CCA Nor Plaintiff's Provision of Her Phone Number Upon Opening Her Account Saves Defendant**

Even if Ms. Schweitzer is bound by the CCA, it is undisputed that she asked Defendant to stop calling her, that Defendant understood the request, and that Defendant could have honored the request, but chose not to do so.  Plaintiff's Statement of Material Facts in Support of Her Motion for Final Summary Judgment ("Pltf. SOF") at ¶¶21-24.

Ms. Schweitzer is not asking for this Court to ignore or re-write the CCA, or to ignore the exemption from the prior express consent requirement that providing one's cellular telephone number in a credit account application constitutes consent to receive debt collection calls (*e.g.,* In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 564 (F.C.C.2008)("FCC Ruling 07-232")),[4] and this Court need not do so. Defendant's policies and practices are clear and undisputed, as is the case law and FCC regulations governing the revocation of consent under the TCPA.

A party may orally revoke consent to receive calls on her cellular phone (*Osorio*), and it is undisputed here that (1) Ms. Schweitzer revoked such consent, and (2) Defendant's CCA does not contain a contractual restriction that precludes Defendant's account holders from revoking their consent. CCA, Exhibit F ([DE 35-6]); *Osorio; Gager v. Dell Fin. Serv.*, 727 F.3d 265, 273-74 (3d. Cir. 2014)(the existence of a contractual relationship for a line of credit does not exempt

---

4      *See also Breslow v. Wells Fargo Bank, N.A.*, 857 F.Supp.2d 1136, 1139 (S.D.Fla. 2012)(in granting summary judgment to the plaintiff on a TCPA claim, the court relied on the FCC Ruling 07-232, explaining that "[t]he FCC qualified this exemption for debt collection calls as calls made with "prior express consent" by emphasizing that consent is deemed to be granted only if the cellular number called: "(1) was provided by the consumer to the creditor; and (2) was provided during the transaction that resulted in the debt owed." *Id.* at 564–65. Moreover, as further protection for consumers, "the *creditor* should be responsible for demonstrating that the consumer provided prior express consent." *Id.* at 565. Thus, the prior express consent exemption acts as an affirmative defense, and "the burden will be on the creditor to show it obtained the necessary prior express consent.""").

the lender from the TCPA's requirements, and borrowers have the right to revoke prior express consent); *Reid v. G.E. Capital Retail Bank*, 2014 WL 69814226 (S.D. GA. 2014)(absent a contractual restriction a party may revoke their consent to receive calls from an ATDS).

Further, Defendant's policy and procedure manual dictates that "[c]onsumers may request to stop calls to a mobile phone number at anytime **via verbal or** written notice." Exhibit J. Defendant's corporate representatives and employees confirmed that Comenity expressly permits its account holders to revoke consent to receive calls. Pltf. SOF at ¶¶11-12.

### 1. Plaintiff Revoked Her Consent

Ms. Schweitzer plainly told Comenity on October 13, 2014 to stop making calls to her cellular phone. Pltf. SOF at ¶21; Plaintiff's Declaration in Support of Her Motion for Summary Judgment, attached to her Statement of Material Facts as Exhibit H ("Pltf. Dec."), at ¶9. All of Comenity's representatives testified that they understood Ms. Schweitzer to be making this very request. Pltf. SOF at ¶¶22-24. Indeed, it is undisputed that Defendant understood the request, and that Defendant could have honored it, but chose not to. *Id*; Pltf. SOF at ¶¶32-35. Thus, while Defendant may deny, after-the-fact, that it did not understand Plaintiff's revocation request, the undisputed material facts establish otherwise.

Moreover, there is no record evidence that Ms. Schweitzer invited or asked Defendant, expressly or otherwise, to call her at any time, let alone on or after October 13, 2014. Rather, Defendant's corporate representatives, as well as Defendant's employee who spoke with Ms. Schweitzer during the October 13, 2014 call, uniformly testified that, based on their review of the recording of the October 13, 2014 call, it was clear that Plaintiff was asking that Defendant stop calling her, and that Plaintiff never again asked for Defendant to call or provided permission

for her to do so. Pltf. SOF at ¶¶22-24.[5]

The effectiveness of Plaintiff's October 13, 2014 revocation is further evidenced by Ms. Schweitzer's March 19, 2015 statement to Defendant in which she again asked, "can you just please stop calling"; Defendant admits Plaintiff's March 19 statement was an effective revocation. Defendant's Motion at p. 10, ¶31; Pltf. SOF at ¶¶29-31. There is no material difference between Ms. Schweitzer's March 19, 2015 and October 13, 2014 instructions with the exception that in October Ms. Schweitzer asked Defendant to stop calling in the morning and during work hours (and that in October Ms. Schweitzer was clearly upset and frustrated because, as she explained, "my phone's ringing off the hook with you guys calling me.") Defendant cannot claim that these virtually identical instructions are in any way different, because all of Defendant's representatives have admitted that they understood Ms. Schweitzer's October 2014 instructions in the same fashion as Defendant understood the March 19 instructions – a request to stop the phone calls.

### 2. Defendant's Contract Does Not Prohibit Revocation of Consent

Finally, there is no language in Defendant's CCA that precludes an account holder from revoking their consent to receive calls and, as noted above, Defendant admits that account holders may do so. It is for this reason that Defendant does not and cannot cite to any language from the CCA to support its argument that a restriction in the CCA precluded Ms. Schweitzer from revoking her consent. There is no such restriction. CCA, Exhibit F ([DE 35-6]).

Defendant's contention that to effectively revoke consent a consumer must cancel its contract is nonsensical; is factually and legally unsupported; and should be rebuked by this court. *E.g., Gager v. Dell Fin. Serv.*, 727 F.3d 265, 273-74 (3d. Cir. 2013)(rejecting argument that a

---

5    *See ACA Declaratory Ruling*, 23 FCC Rcd at 565, para. 10 (concluding that "[s]hould a question arise as to whether express consent was provided, the burden will be on [the caller] to show it obtained the necessary prior express consent").

contract between the parties restricts the consumer's right to revoke consent under the TCPA). In reality, the CCA purports to obtain the account holder's consent to allow Defendant to call using an ATDS, but it contains absolutely no language restricting the account holder's right to revoke such consent. Even more, it is undisputed that the CCA does not contain any language that suggests or even mentions a prohibition or restriction of any kind on an account holder's right to revoke consent. CCA at Exh. F. Because there is no such restriction, and because it is undisputed that Ms. Schweitzer instructed Defendant to stop calling her, her revocation is effective. *See Osorio*.[6]

### 3. Defendant Allows Its Customers to Revoke Consent

Similarly, Defendant's suggestion that Ms. Schweitzer was required to cancel the CCA and her account in order to revoke her consent is squarely contradicted by the undisputed material facts. First, Defendant's corporate representatives testified that an account holder may revoke their consent to receive calls, and that such revocation does not result in the closing of the respective account.  Pltf. SOF at ¶12. Second, Defendant's policy and procedure manual memorializes that "[c]onsumers may request to stop calls to a mobile phone number at anytime **via verbal or** written notice."  Exhibit J, and Pltf. SOF at ¶10.

Indeed, whether measured by the October 13, 2014 call during which Ms. Schweitzer revoked her consent, or even the March 2015 date, which Defendant claims without support as the date she did so, Defendant did not close Ms. Schweitzer's account, and allowed it to remain open. The only impact of such revocation is that Defendant may no longer call such persons on

---

6       Whether under Delaware law or applicable Federal Law, such as *Osorio* – on which Defendant seeks to rely, albeit improperly, or FCC regulations, it is well settled that a party may revoke its consent to receive calls. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* No. CG02–278, 2015 WL 4387780, at ¶ 64 (OHMSV July 10, 2015).

their cellular phones using an ATDS or pre-recorded or artificial voice. Indeed, it is undisputed that Defendant can and does continue to communicate with account holders that revoke their consent via manually dialing their phones, traditional mail and email. Pltf. SOF at ¶¶15-17.

Ultimately, Defendant failed to honor Ms. Schweitzer's October 2014 request not because it did not understand it or could not do so,[7] but because it chooses not to honor her request. Defendant could have continued to communicate with Ms. Schweitzer by manually calling her, emailing her, or sending her letters. *Gager*, 727 F.3d at 274 (rejecting argument that revocation of consent to receive calls via an ATDS should be prohibited because "creditors are permitted to attempt live, person-to-person calls in order to collect a debt" and thus the only restriction "imposed by the TCPA is that [the creditor] will not be able to use an automated dialing system to do so."). It chose to continue calling her using its ATDS not because her revocation was unclear, but because Defendant simply chose not to comply with the TCPA.

### 4. Plaintiff Never Again Provided the Requisite Consent

Because Plaintiff effectively revoked her consent on October 13, 2014, Defendant was without prior express consent to call her cellular phone again using an automated dialer or pre-recorded or artificial voice. It is undisputed that Defendant never again obtained such prior express consent. In fact, the only record evidence is Defendant's concession that it never again

---

[7]   Notably, the FCC has cautioned that "callers may not deliberately design systems or operations in ways that make it difficult or impossible to effectuate revocations." *In re Rules and Regulations Implementing the TCPA of 1991,* Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, ¶¶ 64, n. 233, 2015 WL 4387780 (released Jul. 10**,** 2015). Here, one may argue that Defendant ran afoul of this prohibition, as Defendant has conceded that it did not honor Ms. Schweitzer's request because its ATDS is not currently programmed so that Comenity can select to call account holders during certain time periods. However, as Defendant also conceded, Defendant could have honored Ms. Schweitzer's requests regardless, by directing its ATDS to cease all calls to Ms. Schweitzer while continuing to communicate with her via manually dialed calls, email and letters. Ultimately, it remains undisputed that Ms. Schweitzer asked Defendant to stop calling her in the morning and during work days, and Defendant understood the request.

asked for Plaintiff's permission to call her using an ATDS. Pltf. SOF at ¶¶24, 42.

### III.   PLAINTIFF IS ENTITLED TO DAMAGES

Pursuant to 47 U.S.C.A. § 227(b)(3)(B), Plaintiff is entitled to damages of $500 for each violative call. Subsequent to Plaintiff's October 13, 2014 revocation, Defendant called Plaintiff's cellular phone using an ATDS **178** times during mornings and work days. Pltf. SOF at ¶28 and Pltf. Dec. at ¶¶16-18. Thus, this Court should enter partial summary judgment on the issue of damages in the amount of $89,000 (*i.e.,* $500 x 178 calls).

Further, because it is undisputed that Defendant knowingly and intentionally called Plaintiff's cellular telephone using an ATDS for non-emergency purposes, and having established that Defendant did so without Plaintiff's consent subsequent to her October 13, 2014 revocation, this Court should enter summary judgment for Plaintiff on the issue of whether Defendant knowingly or intentionally violated the TCPA, and award Plaintiff treble damages for each violative phone call in an amount total $268,500 (178 calls x $500/call = $89,000 x 3 = $267,000).  47 U.S.C.A. § 227(b)(3). Where it is established that a TCPA violation is knowing or willful, the TCPA allows the Court**,** in its discretion, to "increase the amount of the award to an amount equal to not more than *3 times the amount available under subparagraph (B)"*. *Id.* at §227(b)(3)(emphasis added). To satisfy the knowing or willful requirement, the movant must show that the violator knew it was engaged in conduct that violates the TCPA. *E.g., Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107  (11th Cir. 2015).

Here, it is undisputed that Defendant was aware of the TCPA[8] and its obligation to comply with the law (*e.g.,* Pltf. SOF at ¶¶11, 17, and 20, and Exhibit J), that Defendant

---

8      Defendant is no stranger to the TCPA and its obligations to comply with the Act, having agreed to a $8,475,000 settlement of a TCPA class action in *Cousier v. Comenity Bank*, In the United States District Court for the Southern District of California, Case No.: 3:12-cv-02484-MMA-BGS.  Further, while Plaintiff has proffered undisputed materials facts to support this –

understood Plaintiff's October 13, 2014 instructions for Defendant to stop calling her in the morning and during work days (Pltf. SOF at ¶21), and that Defendant continued to do so using an ATDS another **178** times. Pltf. SOF at ¶28. Importantly, Defendant elected to continue calling Plaintiff using an ATDS because it chose not to honor Plaintiff's instructions, and did so despite the fact that it could have done so and could have continued to communicate with her through other, non-violative means, such as manual phone calls, emails and mail. Pltf. SOF at ¶¶15-17. In other words, Defendant was not confused or mistaken as to Plaintiff's revocation request, it simply chose not to honor it. Thus, while Defendant is sure to deny that it knowingly or intentionally violated the TCPA, the undisputed material facts demonstrate that it did so.  Thus, this Court should enter summary judgment against Defendant and in favor of Plaintiff, awarding $267,000 in damages for Defendant's knowing or willful violation of the TCPA.

<u>**CONCLUSION**</u>

Based on the foregoing, Plaintiff respectfully requests that the Court grant final summary judgment for Plaintiff.

RESPECTFULLY SUBMITTED:

By:   /s/ Marc A. Wites
**MARC A. WITES**
mwites@wklawyers.com
WITES & KAPETAN, P.A.
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 354-0205

---

and the other – elements of her TCPA claim, Plaintiff notes that pending before the Court is a motion to compel in which Plaintiff seeks documents which, like Exhibit J to Plaintiff's Statement of Material Facts, are likely to provide further evidence that Defendant willfully or knowingly violated the TCPA. *See* Plaintiff's Corrected Motion to Compel [DE 23].

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 9, 2015, I served the foregoing via email on all

counsel of record or pro se parties identified below in the Service List.


By:    <u>/s/ Marc A. Wites </u>
    **Marc A. Wites**

## <u>SERVICE LIST</u>

**DALE THOMAS GOLDEN, ESQ.**
Florida Bar No.:  0094080
**BENJAMIN W. RASLAVICH, ESQ.**
Florida Bar No.: 0102808
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Fax: (813) 251-3675
braslavich@gsgfirm.com
Counsel for Defendant