UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-80665-DDM

EMILY SCHWEITZER,

      Plaintiff,

v.

COMENITY BANK,

      Defendant.

_____/

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
HER MOTION FOR FINAL SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

**MARC A. WITES**
mwites@wklawyers.com
Fla Bar No. 24783
**WITES & KAPETAN, P.A.**
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 354-0205

Counsel for Plaintiff

Pursuant to Rule 56, Fed.R.Civ.P., and Local Rule 56.1, S.D.Fla.L.R., Plaintiff Emily

Schweitzer files this Reply in Further Support of her Motion for Final Summary Judgment and

Incorporated Memorandum of Law [D.E. 50].[1]

## I.   DEFENDANT'S ARGUMENT CANNOT DEFEAT THE ADMISSIONS OF ITS CORPORATE REPRESENTATIVES THAT PLAINTIFF REVOKED HER CONSENT FOR DEFENDANT TO CALL HER.

The argument of Defendant's counsel cannot vitiate the binding admissions of

Defendant's corporate representatives, all of whom testified that it was clear that Plaintiff

instructed Defendant to stop calling her during the October 13, 2014 call at issue. *See* Plaintiff's

Statement of Material Facts in Support of Motion for Final Summary Judgment and Incorporated

Memorandum of Law [D.E. 49] at ¶¶22, 23. Specifically, Defendant's corporate representative

Daniel Gervais, after listening to the recording of the  October 13, 2014 call (including the

portion in which Plaintiff states "if you guys could not call me, like, in the morning and during

the work day because I'm working and I -- I can't really be talking about these things while I'm at

work. My phone has been ringing off the hook.") was asked "[w]ould you agree with me that the

customer on that recorded phone call asked that Comenity stop calling her during certain time

periods?" and replied by stating "**Yes, sir**." Gervais Dep.[2] at p. 108, lines 11-17 (emphasis

added), Exhibit G.[3] When asked again a moment later if "it was clear to you from that recording

---

1      To the extent Plaintiff does not reply to an argument offered by Defendant, Plaintiff relies on her Motion for Final Summary Judgment.

2      All references to Exhibits herein, unless otherwise indicated, are those exhibits attached to Plaintiff's October 19, 2015, Memorandum in Opposition to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law [DE 35].

3      Defendant's counsel interposed a "form" objection to this question which is without merit as there is nothing wrong with the form of the question. The question properly seeks an admission about a material issue in the case, in response to which Defendant's corporate representative made an admissions.

that the customer was asking that she not be called during certain time periods?" Mr. Gervais

again replied "**Yes, sir**." Gervais at p. 109, lines 7 – 11 (emphasis added).[4]

Similarly, Defendant's corporate representative Rhonda Fahrer, after listening to the

same recorded phone call, was asked if "Ms. Schweitzer asked Comenity to stop calling her in

the morning and during the work day", and replied "**Yes**.", Fahrer, 35, lines 8-13, Exhibit A.[5]

Ms. Fahrer further admitted in two follow up questions that there was nothing unclear about

Plaintiff's request that Defendant stop calling her during the mornings and work days:

> Q. Was there something unclear about the – did you understood that she said don't
> call her during the morning and during the work days, correct?
>
> MR. GOLDEN: Form.
>
> A. Yes.
>
> Q. Was there anything unclear about that?
>
> MR. GOLDEN: Form.
>
> A. No.

Fahrer Dep. at p. 36, lines 4 – 11. Thus, despite Defendant's arguments to the contrary, it is

undisputed that Plaintiff revoked her consent for Defendant to call her by virtue of both the plain

language of Plaintiff's instructions and Defendant's admissions that they understood such

instructions.

Similarly, Defendant's employee who, through Defendant's auto dialer, participated in

the October 13, 2014 call with Plaintiff made the very same admissions, stating that Plaintiff was

"specific" in stating "please stop calling me in the morning and during the work day" (Northcutt

at p. 42, lines 9-15, Exhibit E), that the request was not honored because she did not believe it

---

4      *See* footnote 2.

5      *See* footnote 2.

was possible to honor it (*id*. at 42, line 25 – p. 43, line 7), and that she "understood that [Plaintiff] was asking that Comenity not call in the morning and during the workday (*id.* at p. 69, lines 4-7).[6]

Finally, and perhaps most importantly, Defendant's Opposition to Plaintiff's Statement of Material Facts [D.E. 61] admits that it is undisputed that  Comenity is not aware of any phone calls where any Comenity associate asked Plaintiff for her consent to call her using an ATDS. *Compare* Plaintiff's Statement at ¶26 and Defendant's Opposition Statement at ¶26. Thus, Defendant has conceded that following October 13, 2014, Defendant never obtained Plaintiff's express permission to call her using an automated dialer. As a result, and because Plaintiff revoked her consent in the October 13, 2014 call, all calls initiated by Defendant following that date violate the TCPA.

## II.    DEFENDANT'S CCA DOES NOT AND CANNOT, AS A MATTER OF LAW, PROHIBIT REVOCATION OF CONSENT

Defendant's argument that Plaintiff seeks to amend the CCA so as to allow her to revoke her consent under the TCPA remains a red herring. The existence of a contractual relationship between Plaintiff and Defendant does not exempt Defendant from the TCPA's requirements, and does not preclude Plaintiff from revoking her consent. *Gager v. Dell Fin. Servs., LLC,* 727 F.3d 265, 274 (3d Cir. 2013). In rejecting the same arguments raised by the instant Defendant, the

---

6       Further, the fact that Defendant had the ability to honor Plaintiff's request, but chose not to do so, further supports the reasonableness of her request  *See*  Plaintiff's Statement at ¶¶32-42 and *In re Rules and Regulations Implementing the TCPA of 1991,* Declaratory Ruling and Order, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780 (released Jul**.** 10**,** 2015)("FCC 2015 Order") at ¶64, n. 233 (**"**When assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance, and whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burdens").

-3-

Third Circuit Court of Appeals in *Gager* concluded that "the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement", such that the existence of a language providing consent did not preclude the consumer from revoking consent. *Id*. at 273-274.

Further, Defendant's CCA is silent on the issue of revocation. The plain language of the CCA serves only to provide "direct" consent for consumers to receive communication from Defendant via, *inter alia*, auto dialers.[7] The CCA does not contain any language concerning the revocation of consent to receive such communication, let alone language addressing whether or how the right to revoke may be exercised or waived. *E.g., Sussman v. Weintraub*, 2015 WL 908280, *2 (S.D. Fla. 2007)(the waiver of a right provided by statute, contract, or constitution must be clear and unambiguous).

Finally, as the FCC held in its 2015.Order, that "callers may not infringe on the ability [to revoke consent] by designating an exclusive means to revoke." (FCC 2015 Order at ¶63) and "conclude[d] that callers may not abridge a consumer's right to revoke consent using any reasonable method." *Id.* at ¶64; *see also id.* at ¶70 (finding that "the consumer is not limited to using only a revocation method that the caller has established as one that it will accept."). It is for this reason that there is no legal authority, whether case law or otherwise, permitting parties

---

7        The applicable provision of Defendant's CCA provides, in full, as follows:

**"27. Communication Regarding Account.** Until your account is finally settled, you give direct consent to receive communications regarding your account to us, any servicers and any collectors of your account, through various means such as 1) any cell, landline, or text number that you provide, 2) any email address that you provide, 3) auto dialer systems, 4) recorded messages, and other forms of communications. Further, you agree that any such communications are not unsolicited for purposes of any state or federal law."

Defendant's Motion for Summary Judgment at Exh. A, p. 7 [D.E. 24-1 at p. 7]. Neither this language nor any other term or provision of the CCA addresses, in any way, the issue of revocation of consent.

to contract away their rights under the TCPA.  *See Skinner v. Bluestem Brands, Inc.*, 2015 WL 4135269, *3 (S.D. MS 2015). Accordingly, even if the CCA did attempt to preclude, limit or place conditions on revocation, such language would be unenforceable for this additional reason. *See also* FCC 2015 Order at ¶63 ("callers may not control consumers' ability to revoke consent."). While parties may include provisions in their contracts which provide consent to place calls using an automated telephone dialing system, the FCC's 2015 Order prohibits parties from contracting away the right to revoke consent as  "the FCC's 2015 Order requires companies to accept revocation of consent by "any reasonable method[,] including orally or in writing."" *Victoria Galbreath v. Time Warner Cable, Inc.*, 2015 WL 9450593, * 4 (E.D. N.C. 2015)(quotations as in original)(quoting FCC 2015 Order at ¶64 ).

### III.    PLAINTIFF'S DECLARATION IS PROPER

Defendant's attempt to attack Plaintiff's declaration is without support. To begin, Defendant does not, because it cannot, cite any rule or case to support its argument. As Defendant recently and graciously acknowledged, Plaintiff does state that her Declaration in support of her motion for summary judgment is based on her personal knowledge (*see* Declaration at ¶1 [D.E. 49-1]), and such basis for her testimony is implicit, if not explicit, in the attestation required by 28 U.S.C. §1746 at the close of Plaintiff's Declaration (as well as her Declaration in opposition to Defendant's motion for summary judgment ([D.E.35-2]) which provides that Plaintiff declares, "under penalty of perjury", that the statements in the declaration are true and correct."  Similarly, there is no prohibition on a declaration referring to other evidence in the record. Plaintiff clearly and properly identified such record evidence, and did not attach it to her Declaration since such items are already in the record.

Finally, contrary to Defendant's contention, Plaintiff's Declaration places in the record

evidence that her workday includes the hours of Monday through Friday from 8:30 a.m. to 5:00 p.m., and this evidence is uncontroverted. *See* Declaration at ¶16.

## IV.    PLAINTIFF IS ENTITLED TO DAMAGES

Defendant's argument that Plaintiff's damages claim is not supported by evidence is based on Defendant's failure to acknowledge the admissible evidence proffered by Plaintiff to support such claim, including but not limited to her Declaration. See Fed.R.Civ.P. Rule 56(c)(1)(A)(motions for summary judgment may be supported by affidavit or declaration). Simply calling Plaintiff's evidence insufficient does not make it so.

Defendant's argument is premised on the ill-fated notion that Plaintiff is not entitled to damages because she purportedly did not revoke her consent for Defendant to call her – a point which Defendant, through the testimony of its own representatives, has conceded.

For the same reason, because Defendant has admitted that it understood Plaintiff's request for Defendant to stop calling her during the morning and workdays, Defendant knew it was using ant auto dialer to call Plaintiff's cell phone  without her consent and, therefore, did so knowingly and willfully, entitling Plaintiff to treble damages. *King v. Time Warner Cable, Inc.*, 2015 WL 4103689, *6 (S.D.N.Y. 2015)(treble damages are appropriate where defendant placed calls after learning, through its agent, that the consumer revoked consent).  Plaintiff's Motion, and its accompanying Statement of Material Facts, contain considerable evidence supporting the award of treble damages, ranging from Defendant's repeated admissions that, *inter alia*, (a) it understood that Plaintiff was instructing Defendant to stop calling her, (b) it could have coded its dialer to not call Plaintiff and instead called her only manually, (c) it could have coded its dialer to only call Plaintiff at certain times, and (d) other customers have requested to not be called during certain times, as did Plaintiff, and Defendant continues to call them using a dialer despite

such requests. Plaintiff's Statement at ¶¶32-42.

## CONCLUSION

Based on the foregoing, and for the reasons set forth in Plaintiff's Motion for Summary Judgment, Plaintiff respectfully requests that the Court grant final summary judgment for Plaintiff.

RESPECTFULLY SUBMITTED:

By:   /s/ Marc A. Wites
**MARC A. WITES**
mwites@wklawyers.com
WITES & KAPETAN, P.A.
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 570-8989
Facsimile: (954) 354-0205

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 30, 2015, I served the foregoing via email on all counsel of record or pro se parties identified below in the Service List.

By:      /s/ Marc A. Wites
**Marc A. Wites**

## SERVICE LIST

**DALE THOMAS GOLDEN, ESQ.**
Florida Bar No.:  0094080
**BENJAMIN W. RASLAVICH, ESQ.**
Florida Bar No.: 0102808
**GOLDEN SCAZ GAGAIN, PLLC**
201 North Armenia Avenue
Tampa, Florida 33609-2303
Phone: (813) 251-5500
Fax: (813) 251-3675
braslavich@gsgfirm.com
Counsel for Defendant